UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WALTER LEROY ROBERTS                          CIVIL ACTION

VERSUS                                                       NO. 10-1794

SHERIFF TERREBONNE PARISH               SECTION "J" (2)
L. VERNON BOURGEOIS, JR. ET AL.


## REPORT AND RECOMMENDATION

Plaintiff, Walter Leroy Roberts, is a prisoner currently incarcerated in the Terrebonne Parish Criminal Justice Complex in Houma, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Terrebonne Parish Sheriff L. Vernon Bourgeois, Jr. and Major LeeRoy Lirette. Roberts alleges that while incarcerated in the Terrebonne jail, he was subjected to inadequate security and insufficient "control" by jail personnel during meal distribution, "leading to some inmates going without food." Record Doc. No. 1 (Complaint at ¶ IV).

On August 3, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se and W. Seth Dodd, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

In his written submissions, Roberts alleged that "food trays are not passed out in a manner that assures that each inmate will receive their tray without pushing(,) shoving and at times fighting for their tray. C.O.'s [correctional officers] not in control of service of meals, leading to some inmates going without and others receiving more than one tray. This is an ongoing problem affecting every inmate at every meal. We have a right to be fed without the stress of fighting(,) pushing or shoving or worrying about going hungry." Record Doc. No. 1 (Complaint at ¶ IV).

During his testimony, Roberts stated that he was then incarcerated in the Terrebonne Parish Criminal Justice Complex based upon his guilty plea in mid-July 2010 to two misdemeanor counts, including criminal damage to property and aggravated assault. He testified that he was arrested on these charges on April 12, 2010, and has been incarcerated since that time. Plaintiff stated that he was sentenced to two concurrent 90-day prison terms and that he expected to be released on or about August 12, 2010.

Roberts testified that defendants failed properly to supervise the distribution of food to inmates, including himself, during his incarceration. Specifically, he stated that prison officials provide no supervision when food is "passed through the hatch hole, which causes . . . the bully inmates [to] take two or three trays . . . the last guys in line wind up without a tray." He said he had witnessed "quite a few" instances at mealtime

when inmates had been involved in fights, with some inmates "beat up" during food distribution into the cell block. Roberts stated that food distribution generally consists of "a trusty taking it off of a cart and sliding it through the hole, and all he's responsible for is, if there's 30 people in there, he's responsible to put 30 trays in there. He doesn't much care who gets it."

Asked if he had been involved himself in fights over food distribution, Roberts said, "No, I have not been involved in a fight, but probably six or seven times I've had to wait. What will happen is, if the guy doesn't go get his tray from whoever has an extra tray, they have a little squawk box on the wall, you go push the button on the squawk box, tell them you didn't get your tray, and most times – not all times, but most times – they'll wait till the whole pod is served and then what's left over on the cart, they'll bring back to you. I've been real fortunate. Every time I've missed out on a tray at the hatch hole, I've gotten one by waiting until they bring them back around again, but . . . I've seen times when a guy went without his tray because they didn't have . . . any extras at the end." Roberts clarified, however, that he himself had experienced only occasional delay of about 30 to 45 minutes in receiving a meal and has never actually had to go without a meal because of the alleged lack of adequate supervision during meal distribution.

Roberts repeated that he has not been involved himself in any fights during food distribution. He stated that he has not suffered any kind of physical injury as a result of the food distribution problems and that he has not gone without food, only that his meals are sometimes delayed. He described the problem he has experienced as a feeling of insecurity that there could have been a problem if he had not gotten a food tray later.

Plaintiff described the jail area where he was housed as a two-story dorm with 15 cells on the top floor and 15 on the bottom. He said the nearest security officer is located in a control booth at the center of a "pod" of cell blocks, with surveillance cameras both on the outside of the cell areas and pointed toward the inside.

Roberts said the problem of inadequate supervision during meal distribution occurred during his entire four months of incarceration. He said the situation has "gotten better" during the last month of his incarceration in that "there's been a little more when there's been an officer at the hatch hole" during meal distribution, but it still does not occur at every meal. Plaintiff stated that he does not know the names of the officers in control of food distribution and that he will need to obtain them during discovery.

<u>ANALYSIS</u>

I.    <u>STANDARDS OF REVIEW</u>

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994)

(quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section

1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[1]

## II.   <u>FOOD</u>

Plaintiff complained that inadequate supervision during meal distribution caused stress concerning the possibility of going hungry and occasional delays in his receipt of meals. He conceded that he never went without a meal.

Prison officials violate the Constitution if they fail to provide prisoners with reasonably adequate food, clothing, shelter, and sanitation. <u>Gates v. Cook,</u> 376 F.3d 323, 332 (5th Cir. 2004) (citing <u>Farmer v. Brennan,</u> 511 U.S. 825, 832 (1994)).

In this case, plaintiff's allegations, while describing less than ideal conditions, do not state a violation of plaintiff's constitutional rights. Constitutional standards require

---

[1]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

only that prison authorities provide an inmate with "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999) (quoting Green v. Ferrell, 801 F.2d 765, 770 (5th Cir. 1986)). Plaintiff has failed to set forth facts to establish a deprivation of or deviation from this quality of food. The Constitution does not require that convicted inmates be provided with particular foods in any particular manner or every culinary amenity which one may find desirable. Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983); Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979) (citing Newman v. Alabama, 559 F. 2d 283, 291 (5th Cir. 1977)).

The Constitution also does not require that plaintiff receive particular amounts or kinds of food. Green, 801 F.2d at 770. "'Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation.' Even on a regular, permanent basis, two meals a day may be adequate." Berry, 192 F.3d at 507 (quoting Green, 801 F.2d at 770-71). Further, "inmates cannot expect the amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F. 2d 1232, 1235 (7th Cir. 1988).

Plaintiff was never denied food. He was never personally involved in any fight over food. At worst, his receipt of meals was occasionally delayed and, even then, only for a matter of less than an hour. Roberts's complaints about food distribution at the jail are legally frivolous and must be dismissed.

III.    FAILURE TO PROTECT FROM HARM

Construed broadly, Roberts's allegations may also assert that defendants failed to protect him from harm.  While the alleged lack of mealtime supervision described by Roberts may be unfortunate, the question for this court is whether a violation of federal constitutional rights has been stated.  Accepting as true for present purposes all of Roberts's written submissions and testimony, I must conclude that no violation of Roberts's constitutional rights by the defendants occurred in these circumstances.

As previously noted, Roberts was a pretrial detainee for part of the time period on which he bases this claim and a convicted inmate for the remainder.  In <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement."  <u>Id.</u> at 650.  Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Roberts in this case.  <u>Hamilton v. Lyons</u>, 74 F.3d 99, 104 n.3 (5th Cir. 1996); <u>Hare</u>, 74 F.3d at 650.  Here, although plaintiff alleges that he was exposed to harm by prison officials' acts or omissions, he fails to state a claim cognizable under Section 1983.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare, 74 F.3d at 650. The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, plaintiff must establish that defendants possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Newton, 133 F.3d at 308. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In this case, it cannot be concluded that prison officials unconstitutionally exposed plaintiff to a substantial risk of serious harm, because plaintiff's written allegations and

testimony are insufficient to state either deliberate indifference by defendants or a <u>substantial</u> risk of <u>serious</u> harm to Roberts himself.

Roberts's testimony, even accepted as true in its entirety, does not rise to the level of deliberate indifference to a known risk of substantial harm required to establish a constitutional violation. In fact, he suffered no harm whatsoever, much less serious harm. He missed no meals. He was involved in no fights with other inmates over food. On those few occasions when his own meals were delayed, they were always delivered upon request within less than an hour. The stress and anxiety at mealtime about which plaintiff complains simply does not rise to the level of a violation of constitutional rights.

Under these circumstances, it cannot be concluded that any act or omission of prison officials knowingly exposed Roberts to a substantial risk of serious harm or that they were deliberately indifferent, the strict standard required by the law for constitutional purposes. In the absence of these factors as discussed above, prison officials cannot be liable under Section 1983.

## IV.  NO PHYSICAL INJURY

Roberts's written complaint sought only injunctive relief. Construed broadly, however, his testimony indicated that he might also seek compensatory damages. To whatever extent, if any, that plaintiff may seek general damages, his claim is deficient under Section 1983 because he fails to allege "physical injury" sufficient to support his

claim for monetary damages. Specifically, the Prison Litigation Reform Act of 1996

includes the following requirement in 42 U.S.C. § 1997e(e): "<u>No</u> Federal civil action

<u>may be brought</u> by a prisoner confined in a jail, prison, or other correctional facility, <u>for</u>

<u>mental or emotional injury</u> while in custody without a prior showing of physical injury."

(Emphasis added). Roberts does not allege physical injuries of any kind as a result of the

alleged lack of meal distribution supervision.

The Fifth Circuit has consistently enforced the statutory physical injury

requirement for prisoners who seek compensatory damages for intangible emotional or

psychological harm, such as has been alleged by Roberts in this case. <u>Hutchins v.</u>

<u>McDaniels</u>, 512 F.3d 193, 196 (5th Cir. 2007); <u>Geiger v. Jowers</u>, 404 F.3d 371, 374-75

(5th Cir. 2005); <u>Herman v. Holiday</u>, 238 F.3d 660, 665 (5th Cir. 2001).

The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e)

'must be more than de minimus [sic], but need not be significant.'" <u>Alexander v. Tippah</u>

<u>County</u>, 351 F.3d 626, 631 (5th Cir. 2003) (citing <u>Harper v. Showers</u>, 174 F.3d 716, 719

(5th Cir. 1999) (quoting <u>Siglar</u>, 112 F.3d at 193); <u>accord</u> <u>Mayes v. Travis State Jail</u>, No.

07-51086, 2008 WL 4657078, at *1 (5th Cir. Oct. 22, 2008). Thus, in <u>Alexander</u>, the

court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their

emotional and mental injuries" when the only physical injuries they suffered were nausea

and one incident of vomiting. <u>Id.</u> Similarly, in <u>Siglar</u>, the court held that a prisoner's ear

that was sore and bruised for three days was merely a de minimis injury. <u>Siglar</u>, 112 F.3d at 193.

In this case, Roberts admittedly suffered <u>no</u> physical injuries of any kind as a result of the alleged lack of adequate security, but stated only that he experienced stress, concern and anxiety. As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, <u>Hutchins</u>, 512 F.3d at 197-98, Roberts has not shown any constitutional violation that would entitle him to even nominal damages, "[n]or has [plaintiff] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages." <u>Allen v. Stalder</u>, 201 Fed. Appx. 276, 2006 WL 2852925, at *1 (5th Cir. 2006) (citing <u>Williams v. Kaufman County</u>, 352 F.3d 994, 1015 (5th Cir. 2003)). Thus, plaintiff's complaint must be dismissed in this regard.

## <u>RECOMMENDATION</u>

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ____13th____ day of August, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE